**BROWN LEASING COMPANY, f/k/a Capitol Leasing Company, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Cosmopolitan National Bank of Chicago, a national bank, Cosmopolitan Bancorp Inc., Alex M. Vecillo, Gerald J. DeNicholas, James Wells, Michael High, Sr., Charles E. Robbins, and Dennis Polk, Defendants.**

The **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Cosmopolitan National Bank of Chicago, Counter–Plaintiff,**

v.

**BROWN LEASING COMPANY, f/k/a Capitol Leasing Company, and Terry N. Brown, Counter and Third–Party Defendants.**

No. 91 C 3729.

United States District Court, N.D. Illinois, E.D.

Aug. 11, 1993.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

This matter is before the Court on the motion of the Federal Deposit Insurance Corporation (FDIC) as Receiver for the Cosmopolitan National Bank of Chicago ("Cosmopolitan") to amend or alter the judgment entered on March 26, 1993, disposing of this case in its entirety for lack of subject matter jurisdiction. This Court essentially dismissed various state law claims in tandem with the National Bank Act claims, on which subject matter jurisdiction was premised. This matter is also before the Court on Brown Leasing's motion for leave to file its second amended complaint.

## I. MOTION TO AMEND JUDGMENT

■ Although not argued in their prior motions, the parties are correct that despite dismissal of the National Bank Act claims, 12 U.S.C. § 1819 remains a potential source for this Court's exercise of original jurisdiction over the case. Section 1819 provides that "all suits of a civil nature ... to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A) (1991). After the Office of the Comptroller of the Currency appointed the FDIC as Receiver for Cosmopolitan, the parties substituted the FDIC as defendants in this case. Accordingly, this Court may have federal question jurisdiction over the claims asserted against the FDIC. Similarly, this Court may have supplemental jurisdiction over the state law claims asserted against the other defendants under 28 U.S.C. § 1367. This Court, therefore, vacates dismissal of the state law claims and considers now the FDIC's motion to dismiss claims asserted against it. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) (Rule 59(e) motion to alter or amend judgment should be granted if it "clearly establish[es] either a manifest error of law or fact or [ ] present[s] newly discovered evidence").

In order to trigger federal jurisdiction under § 1819, Brown Leasing must do more than name the FDIC as a defendant in a suit filed in federal court. The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") requires compliance with an administrative claims review process, which commences with the "depository institution's creditors present[ing] their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice." 12 U.S.C. § 1821(d)(3)(B) (1991). The FDIC moves to dismiss the conversion and breach of contract claims in Counts IV

and V of the amended complaint on the basis that Brown Leasing failed to timely present these new claims for an additional $800,000 to the Receiver in compliance with § 1821.

Brown Leasing asserts two arguments in opposition to this motion. Brown Leasing first contends that it presented its claims to the FDIC on June 20, 1991, when it filed its proof of claim in response to the FDIC's Notice to Creditors. Brown Leasing argues that this filing sufficiently placed the FDIC on notice of its claims and satisfied § 1821, even though the claims for conversion and breach of contract were not individually pleaded in the original complaint attached as proof of its claims. According to Brown Leasing, the breach of participation agreement claims asserted in the complaint, the documents submitted as proof, along with its request for adjudication of the parties' rights and liabilities under the participation agreements, sufficiently apprised the FDIC of its "overall claims." Alternatively, Brown Leasing argues that it filed this action prior to the FDIC's appointment as Receiver so that, under 12 U.S.C. § 1821(d)(5)(F)(ii), its rights to pursue its pre-receivership claims cannot be prejudiced and its failure to exhaust administrative remedies thereby is excused.

■ This Court agrees with Brown Leasing to the extent that FIRREA does not warrant automatic dismissal of claims filed prior to the FDIC's appointment as Receiver. The majority of courts follow the holding and rationale as stated in *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148 (1st Cir. 1992). The First Circuit in *Marquis* found that FIRREA, specifically the jurisdictional bar provision in § 1821(d)(13)(D),[1] does not mandate dismissal of actions initiated prior to the FDIC's appointment as Receiver. *Marquis*, 965 F.2d at 1154. To hold otherwise would drain the 90–day stay provision in

§ 1821(d)(12) of all meaning. *Id.* Rather, the First Circuit held that "FIRREA did not strip the federal courts of subject matter jurisdiction over civil actions pending against a failed financial institution at the time the FDIC takes over as the institution's receiver." *Id.* at 1155.

The decision in *Marquis*, however, is not dispositive of the specific issues raised in the FDIC's motion to dismiss. The posture of this case is different from those cases cited by either party. After Brown Leasing filed its administrative claim (attaching the original complaint previously filed in federal court) and the FDIC disallowed it, this Court in July 1992 dismissed the claims asserted in the original complaint against the FDIC. This Court determined that the original complaint failed to state a claim against the FDIC as Receiver because it sought to enforce alleged oral agreements between Brown Leasing and Cosmopolitan.[2] Brown Leasing subsequently amended its complaint in September 1992 to add the conversion and breach of contract claims against the FDIC as a defendant. Brown Leasing never amended its administrative claim. The time for filing claims with the FDIC against Cosmopolitan has expired.

■ These facts present a question of first impression. The question on this motion is whether dismissal is warranted when a claimant fails to submit claims, filed after appointment of a receiver as an amendment to a pre-receivership lawsuit pending in federal court, to FIRREA's administrative review process and the time for submitting claims to the receiver has expired. This Court finds that *Marquis*, while not dispositive, does provide a starting gate. The court in *Marquis* recognized that the filing of a pre-receivership suit does not excuse compliance with the administrative claims review process. *Mar-*

---

1. Section 1821(d)(13)(D) provides:

   Except as otherwise provided in this subsection, no court shall have jurisdiction over—
      (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or

omission of such institution or the [FDIC] as receiver.
12 U.S.C. § 1821(d)(13)(D) (1991). This provision consequently applies to actions seeking a declaration of rights regarding such assets. *Marquis*, 965 F.2d at 1152.

2. Under the *D'Oench* doctrine and 12 U.S.C. § 1823(e), oral agreements are not enforceable against the FDIC.

*quis,* 965 F.2d at 1151. To the contrary, compliance with FIRREA's procedure is mandatory for all claims whether asserted as part of a pre- or post-receivership lawsuit. *Marquis,* 965 F.2d at 1151. Generally, a district court exercises its discretion and stays the proceedings "to permit exhaustion of the mandatory administrative claims review process." *Id.; Federal Deposit Ins. Corp. v. Glynn,* No. 91 C 3723, 1993 WL 489761, 1992 U.S.Dist. LEXIS 8619 (N.D.Ill. June 17, 1992) (district court retains subject matter jurisdiction over continued lawsuit if plaintiff exhausts the administrative claims review procedure or if plaintiff demonstrates an appropriate excuse for non-compliance). Staying the proceedings in this case, however, would be futile since Brown Leasing previously filed an administrative claim and the time for filing claims with the FDIC has expired.

█ It is fundamental that "where a claimant has been properly notified of the appointment of a federal insurer as receiver ... and has nonetheless failed to initiate an administrative claim within the filing period, ... the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court." *Marquis,* 965 F.2d at 1152. The question then is whether Brown Leasing's administrative claim, filed with the FDIC on June 20, 1991, incorporated its amended claims for conversion and breach of contract so that Brown Leasing can be deemed to have exhausted the administrative review process as to these claims. This Court cannot trace either of these amended claims to any remnants of Brown Leasing's original complaint, attached as proof of its claims against the failed institution and now the FDIC. The original complaint simply requests adjudication of the rights and liabilities of the parties to the participation agreements. The facts as spelled out in the complaint do not attribute any wrongdoing to Cosmopolitan's maintenance of plaintiff's deposit checking account, as alleged in Count IV (conversion claim) and Count V (breach of contract claim) of the amended complaint. In fact, Brown Leasing never mentions any misappropriation, much less the sum of $800,000 in the entire original complaint.

For the first time in its reply brief to the motion to amend judgment, Brown Leasing argues that the "FDIC's own claim analysis memo ... clearly indicates that the FDIC considered the subject misappropriation—characterized as an improper 'credit' in the FDIC memo—to be encompassed within Capital Leasing's administrative claim." The FDIC has properly raised a question as to this Court's jurisdiction to proceed with this case by filing a motion to dismiss for lack of subject matter jurisdiction. This Court, therefore, need not accept as true the jurisdictional allegations of the complaint and may consider "whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979). Brown Leasing, as the party invoking federal jurisdiction, ultimately bears the "burden of supporting the allegations of jurisdictional facts by competent proof." *Id.*

Here, Brown Leasing has attached neither the FDIC's claim analysis memo nor a supporting affidavit as exhibits to its motions or briefs. The memo, therefore, does not constitute evidence submitted on the issue of subject matter jurisdiction. All that has been offered is Brown Leasing's representation of the contents of the memo, which is nothing more than a conclusion or opinion. There is no competent proof verifying that the FDIC's mention of an improper "credit" refers to the alleged conversion of $800,000. Consequently, this Court is left with the jurisdictional allegations as evidenced by the proof of claim filed with the FDIC. Brown Leasing cannot convince this Court that the facts as alleged in the original complaint and filed as proof of its administrative claim sufficiently apprised the FDIC of the conversion and breach of contract claims.

This Court is not reading a pleading requirement into FIRREA by holding that Brown Leasing did not comply with the notice requirements of § 1821. This Court simply finds that the FDIC is entitled to fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution. To require anything less would impose a burden on the FDIC to research

the entire corpus of both federal and state law for any legal theory supported by each set of facts presented. Such an enterprise would impose indefensible costs on the FDIC and frustrate FIRREA's intended purpose of expeditiously and fairly resolving the majority of claims against failed institutions without protracted litigation. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., at 418–19, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 214–15.

FIRREA by and large was designed for persons suing on financial disputes, the majority of whom are represented by counsel. It is possible that the result would be different if this Court were dealing with a *pro se* plaintiff who lacked legal sophistication. The plaintiff in this case, however, is a business entity represented by competent legal counsel. Moreover, it had ample opportunity after the FDIC's appointment as Receiver to present fully its factual basis and legal theories for recovery against Cosmopolitan and the FDIC. According to the amended complaint, the alleged acts of conversion occurred between June 1988 and May 1991. Brown Leasing has not presented a legally permissible excuse for excluding these amended claims from the administrative claim filed with the FDIC on June 20, 1991. Absent such an excuse, this Court will not permit the plaintiff to hide behind § 1821(d)(5)(F)(ii) in the solace that FIRREA cannot prejudice its rights to continue an action filed before appointment of a receiver.[3]

This Court finds that dismissal of Counts IV and V in Brown Leasing's amended complaint for failure to exhaust administrative procedures is warranted under the circumstances and the recognized purpose of the elaborate procedures outlined in FIRREA. Having dismissed these counts, this Court refuses to exercise supplemental jurisdiction over the state law claims asserted against non-FDIC defendants.

## II. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

■ Brown Leasing now moves for leave to file a second amended complaint. Under Federal Rule of Civil Procedure 15(a), a plaintiff must seek leave of court to file an amended complaint after a responsive pleading is served. Fed.R.Civ.P. 15(a). Whether to grant or deny leave to amend a pleading falls within the court's discretion. *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992). Leave, however, "shall be freely given when justice so requires." *Id.* Where the proposed amendments fail to cure a prior pleading deficiency, this Court may deny leave to file the amended complaint as futile. *Moore v. State*, 999 F.2d 1125, 1128 (7th Cir.1993) (affirming denial of motion to amend because proposed amendment was futile where damage claims could not withstand motion to

3. Section 1821(d)(5)(F)(ii) states:
   Subject to paragraph (12) [the 90–day stay proceeding], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.
   12 U.S.C. § 1821(d)(5)(F)(ii) (1991).
   The Ohio Supreme Court recently held that the implication of this provision is that Congress intended courts to retain jurisdiction over pending lawsuits whether or not the litigant files a claim with the receiver. *Herbst v. Resolution Trust Corp.*, 66 Ohio St.3d 8, 607 N.E.2d 440 (1993) (state court retained jurisdiction and plaintiff did not have to refile in federal court). The factual scenario raised in *Herbst*, however, is nothing like the situation here. The plaintiff here filed a lawsuit in federal court and subsequently filed an administrative claim with the FDIC. The plaintiff, perhaps inadvertently, failed to include the conversion and breach of contract claims in both the original complaint

and the administrative claim. Technically, these claims were not part of the pre-receivership lawsuit. Therefore, even under the *Herbst* court's strict interpretation, the statute does not protect the plaintiff from prejudice, especially prejudice occasioned by plaintiff's own negligence.
   Moreover, while these motions were pending, the U.S. District Court of Massachusetts in *Coleman v. Federal Deposit Ins. Corp.*, 826 F.Supp. 31 (D.Mass.1993), dismissed counts of an amended complaint on the ground that the "claims constitute new claims that were not submitted to the FDIC administrative claim process." The plaintiffs in *Coleman* similarly had filed a proof of claim with the FDIC, attaching only the original complaint (previously filed in federal court) to espouse their claims against the failed institution. The *Coleman* court held that under §§ 1821(d)(6) and 1821(d)(13)(D), it had "no jurisdiction over claims and theories of recovery in the Amended Complaint that were not asserted in the original complaint."

dismiss); *J.D. Marshall Int'l., Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir.1991).

■ The deficiency here is the lack of a federal question on which to base federal jurisdiction. Brown Leasing attempts to cure this defect in the proposed second amended complaint by alleging federal claims for violation of the National Bank Act, 12 U.S.C. § 161(a) and the Federal Reserve Act, 18 U.S.C. § 1005. Both of these claims emanate from Cosmopolitan's alleged "willful misstatement and omission of the Cosentino Credit Arrangement in its books and records and report to federal regulators."

As noted in this Court's prior opinion, to state adequately a claim under § 161(a), Brown Leasing must link the misstatements to reports filed with the Comptroller and must allege sufficiently its reliance on these misleading records. This applies with equal force to the § 1005 claim. *See Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 316 n. 2 (6th Cir.1987) (simultaneously analyzing standing under § 93 and § 503 because provisions "contain[ ] essentially identical language"). On the element of reliance, Brown Leasing's second amended complaint alleges the FDIC as Receiver relied on these documents in refusing to recognize Cosmopolitan's guarantee of the Cosentino loan. It also alleges summarily that it relied on Cosmopolitan's directors to make truthful records after entering into the Cosentino Credit Arrangement in compliance with the statutory requirements. Brown Leasing, however, has missed the boat. The proposed second amended complaint is still wanting of any allegation that Brown Leasing relied directly on the misstatements or omissions contained in the reports themselves. This is so probably because at the time it entered into the Cosentino arrangement, it could not have relied on statements that had not yet been authorized. Furthermore, had it seen the reports after the fact, it would have been apprised of the transaction's absence.

■ Brown Leasing poses, without citing supporting caselaw, that reliance is not a necessary element to its § 93 and § 503 claims for violation of §§ 161(a) and 1005 because its injury was a direct result of the misstatements in the bank's books and reports. What Brown Leasing says is this:

> As alleged in the [proposed] second amended complaint, the Bank's directors and officers falsely and improperly recorded and failed to record the Bank's guarant[ee] of the Cosentino loan and various misapplications of Brown Leasing's funds and accounts in Cosmopolitan's books and in its reports to federal regulators. Among other things, these banking violations directly and proximately caused the invalidity (against the FDIC) of Brown Leasing's $1,950,000 Standby Letter of Guarantee, and also directly and proximately caused losses in excess of $800,000 to Brown Leasing due to the Bank's misapplication of funds owned by or owed to Brown Leasing.

What the proposed second amended complaint says is that "Brown Leasing has been damaged in an amount in excess of $1,950,-000, plus accruing interest, by the defendant directors' willful violation of 12 U.S.C. § 161(a)—their failure and refusal to properly report the 'liabilities of the association' related to the Cosentino Credit Arrangement to federal regulators." According to the pleading, this failure to record Cosmopolitan's liabilities under the Cosentino Credit Arrangement enabled the FDIC to refuse to recognize the Standby Letter of Guarantee as Cosmopolitan's liability and to assert the *D'oench* doctrine and 12 U.S.C. § 1823(e) as a bar to enforcing the guarantee against Cosmopolitan's receivership estate.

One problem with Brown Leasing's proposed amendment is that the direct cause of its losses is Brown Leasing's failure to get Cosmopolitan's guarantee in writing, not Cosmopolitan's failure to record the guarantee in its books. Another is that it attempts to accomplish indirectly what it cannot do directly—i.e., enforce an oral agreement against the FDIC. Brown Leasing, in complete disregard for this Court's prior ruling, premises its National Bank Act and Federal Reserve Act claims on the failure to record Cosmopolitan's guarantee of the Cosentino loan. As this Court held in its July 28, 1992 Memorandum Opinion and Order, there is no enforceable Cosmopolitan guarantee:

The only link between the guarantee letter and Cosmopolitan is the representation that DeNicholas allegedly made to plaintiff that the letter would be sufficient to bind Cosmopolitan to the guarantee. Because this representation was not reduced to a writing, the transaction fails within the strictures of *D'oench* and § 1823, and plaintiff cannot seek enforcement of this oral agreement against the FDIC.

In order to succeed on its National Bank Act and Federal Reserve Act claims, Brown Leasing must prove that Cosmopolitan guarantied the Cosentino loan by introducing evidence that DeNicholas made oral representations. The ultimate result would be to give legal effect to an oral agreement against the FDIC in complete contravention of the Supreme Court's decision in *D'oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and Congress's directives in 12 U.S.C. § 1823(e). So even assuming Brown Leasing's losses "directly resulted" from the bank's allegedly false reports, Brown Leasing's proposed amendment is still fatally deficient because the violation of § 161(a) and § 1005 is dependent on the legal effect of an oral agreement. Because the proposed amendments do not cure the federal jurisdiction defect,[4] this Court denies Brown Leasing leave to file the second amended complaint.

---

4. Brown Leasing has also failed to allege in the proposed amendment exhaustion of administrative remedies for purposes of its conversion and breach of contract claims against the FDIC. Merely alleging that it "advised" the FDIC of the misappropriation and demanded repayment is not enough in light of this Court's earlier discussion. Also, to the extent that Brown Leasing's National Bank Act claims concern the $800,000 conversion and breach of contract claims, the exhaustion of administrative remedies requirement bars these claims.